EL PUEBLO DE PUERTO RICO, peticionario, *v.* CARLOS COLÓN RAFUCCI, acusado y recurrido.

*Número:* CE-94-255          *Resuelto:* 25 de enero de 1996

*Pedro A. Delgado Hernández, Procurador General,* abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Agentes de la División de Drogas y Narcóticos de la Policía de Puerto Rico, adscritos al Cuartel de la ciudad de Ponce, ocuparon y confiscaron un teléfono celular en un operativo policiaco que realizaron.([1]) Estando "encendido" dicho celular en el referido Cuartel, se recibió una llamada a través del mismo, la cual fue contestada por un agente policiaco. La persona que hacía la llamada —el aquí recurrido Carlos Colón Rafucci— se identificó como "Carlos", y creyendo estar hablando con una persona de nombre "Mae", le informó al agente que necesitaba una "cuarta de manteca"; esto es, una "cuarta" de la droga narcótica conocida como "cocaína".

Como consecuencia de dicha llamada, el agente policiaco concertó con "Carlos" una transacción para comprarle la "cocaína" a éste, lo cual culminó con la radicación de cargos criminales, contra el aquí recurrido Carlos Colón

---

([1]) Resulta procedente enfatizar que la validez de la ocupación del teléfono celular y, por ende, la posesión del teléfono por la Policía de Puerto Rico, *no* está en controversia en el presente caso.

Rafucci, ante la Sala de Ponce del antiguo Tribunal Superior de Puerto Rico.

La representación legal del recurrido Colón Rafucci radicó ante dicho foro judicial una "moción de supresión de evidencia" en la cual alegó, en síntesis, que se llevó a efecto, por los agentes del orden público, una "intervención ilegal", "sin que mediara orden de arresto o de allanamiento *y con motivo de la interceptación de comunicación telefónica privada*, en violación del Artículo II, Sección 10, de la Constitución del Estado Libre Asociado de Puerto Rico". (Énfasis suplido.) Apéndice III, pág. 8. Se alegó, *en adición*, que *todo* el testimonio del agente del orden público, que sostuvo la conversación con el acusado recurrido y llevó a efecto la transacción ilegal con éste, es *"consecuencia* de la interceptación ilegal de la comunicación privada que no estaba dirigida a dicho agente". (Énfasis suplido.) Íd.

El foro de instancia, mediante resolución reducida a escrito, declaró con lugar la referida moción de supresión de evidencia; ello en vista del hecho de que dicho tribunal concluyó "que la intervención realizada por el agente de la Policía *representa una intervención ilegal del Estado y una interceptación indebida de la comunicación telefónica*". (Énfasis suplido.) Apéndice I, pág. 5.

Inconforme, el Estado recurrió —vía *certiorari*— ante este Tribunal, imputándole al foro de instancia haber errado al:

A) ... no desestimar de plano la moción de supresión de evidencia por ser insuficiente de su faz —bajo la Regla 234 de Procedimiento Criminal— y por no haber el acusado presentado el memorando de derecho ordenado por el tribunal.
B) ... al declarar con lugar la moción de supresión de evidencia a base de que el Estado incurrió en una interceptación de la comunicación telefónica. Petición de *certiorari*, pág. 2.

Expedimos el auto radicado mediante Resolución de 3 de junio de 1994. El Estado radicó su alegato, no así el

recurrido Colón Rafucci.(²) Estando en condiciones de re-
solver el recurso radicado, procedemos a así hacerlo.

## I

*Procede revocar*; ello en vista del hecho de que la solici-
tud de supresión de evidencia del recurrido Colón Rafucci
se confronta con dos (2) obstáculos que resultan ser
insalvables. En *primer* lugar, somos del criterio que a la
luz de los hechos particulares del caso la acción de la Poli-
cía, al dejar "encendido" el teléfono celular en el cuartel,
realmente *no* constituye una "interceptación telefónica";
actuación específicamente prohibida por la Sec. 10 del Art.
II de la Constitución del Estado Libre Asociado de Puerto
Rico, L.P.R.A., Tomo 1. En *segundo* lugar, y bajo la teoría
de que dicha acción en efecto constituye un "registro o in-
trusión" en su derecho a la intimidad, entendemos que,
bajo los hechos específicos del caso, dicha "intrusión o re-
gistro" es una legítima y razonable. *P.R. Tel. Co. v. Martí-
nez*, 114 D.P.R. 328 (1983).

## II

■ La Sec. 10 del Art. II de la Constitución del Estado
Libre Asociado de Puerto Rico, ante, ed. 1982, pág. 299,
establece:

> No se violará el derecho del pueblo a la protección de sus
> personas, casas, papeles y efectos contra registros, incautacio-
> nes y allanamientos irrazonables.
> *No se interceptará la comunicación telefónica.*
> Sólo se expedirán mandamientos autorizando registros, alla-
> namientos o arrestos por autoridad judicial, y ello únicamente

---

(²) Procede que se señale que, vencido el término que el recurrido Colón Rafucci
tenía para radicar su alegato, este Tribunal —motu proprio y mediante Resolución
de 16 de diciembre de 1994— le concedió un término adicional de veinte (20) días
para así hacerlo.

cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. (Énfasis suplido.)

Como correctamente señala el Prof. Ernesto L. Chiesa, la transcrita Sec. 10 *no* puede leerse o interpretarse en forma aislada de la Sec. 8 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1.([3]) Esto es, "hay un *derecho fundamental unitario* que es el derecho a la intimidad. Este cubre tanto la protección contra registros e incautaciones en el sentido material (registrar lugares e incautar cosas) *como la intrusión más abstracta*". Ahora bien, y como señala Chiesa, no hay duda de que la prohibición contra la interceptación telefónica "tiene un *rango especial*, en cuanto a que queda fuera del esquema general que permite orden judicial basado en causa probable". Ello no obstante, dicha prohibición *no es una absoluta*. Esto es, *cabe* la orden judicial concediendo la interceptación si el "titular del derecho lo renuncia y accede a, o solicita, la interceptación".([4]) (Énfasis suplido.)

Dicho de otra manera, "el derecho de una persona a que no se le intercepte *su* teléfono es parte esencial *del derecho mayor* a la protección de la ley contra ataques abusivos a su honra, reputación y vida privada y familiar". (Énfasis suplido.) *P.R. Tel. Co. v. Martínez*, ante, pág. 340. Esto es, dicho derecho no es uno distinto "al derecho a la intimidad en sí, ni es de rango superior al de éste; es una de sus manifestaciones". Íd., págs. 340–341.

---

([3]) Establece la Sec. 8 del Art. II, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 292, que:

"Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar."

([4]) E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Columbia, Ed. Forum, 1991, Vol. 1, Sec. 6.26, págs. 496–499.

## III

¿Ocurrió una "interceptación telefónica" en el presente caso? *Entendemos que no*; veamos por qué.

■ Para que se entienda que ha habido una "interceptación" se requiere, *de ordinario*, que el "interceptador" —una tercera persona— haya utilizado un "aparato o dispositivo electrónico, mecánico, o de otra índole" para interceptar una conversación que sostienen dos (2) personas a través de las líneas telefónicas. A manera de ilustración, resulta interesante señalar que el *Federal Omnibus Crime Control and Safe Streets Act*[5] —el cual es "aplicable" a Puerto Rico "en casos apropiados", *P.R. Tel. Co. v. Martínez*, ante, págs. 335–336— define el término "interceptación" como "the aural or other acquisition of the contents of any wire or oral communication *through the use of any electronic, mechanical or other device*". (Énfasis suplido.) 18 U.S.C. sec. 2510(4).

Por otro lado, e igualmente a manera de ilustración, resulta procedente señalar que la Corte de Apelaciones de Estados Unidos para el Sexto Circuito resolvió —en *U.S. v. Passarella*, 788 F.2d 377 (6to Cir. 1986)— que *no* constituye ni se configura una interceptación telefónica cuando un agente del orden público meramente contesta un teléfono en una casa, en la cual se encontraba válidamente diligenciando una orden de allanamiento; razón por la cual dicho foro federal resolvió que *no* procedía la supresión del contenido de la llamada, el cual fue utilizado en, y para, la radicación de cargos criminales. Véase, en adición, *U.S. v. Meriwether*, 917 F.2d 955 (6to Cir. 1990).

En el presente caso, es un *hecho incuestionable* que el agente del orden público *no* utilizó un aparato electrónico, *ni* de ninguna otra índole, para obtener conocimiento de lo expresado por el recurrido Colón Rafucci en la llamada te-

---

[5] 18 U.S.C. secs. 2510–2518.

lefónica que, con propósitos criminosos, éste voluntariamente hiciera al teléfono celular previamente ocupado, y confiscado, por el Estado. Dicho agente actuó como "representante" del Estado, el cual, a todos los fines legales, era el "dueño" de dicho teléfono celular en esos momentos. A la luz de esos hechos, *resolvemos* que en el presente caso *no* se llevó a cabo la "interceptación telefónica" que, de manera expresa y específica, prohíbe la citada Sec. 10 del Art. II de nuestra Constitución; esto es, la intervención por una persona con una línea telefónica, mediante el uso de aparatos electrónicos o mecánicos o de otra índole, con el propósito de escuchar y/o grabar la conversación telefónica entre dos (2) o más personas.

## IV

Ahora bien, *no* hay duda que la acción del agente del orden público en el presente caso podría ser considerada como una "intrusión" con el derecho a la intimidad, protegido por las Secs. 8 y 10 del Art. II de nuestra Constitución, ante, del recurrido Colón Rafucci o con el de cualquier otra persona que pudo haber llamado a dicho teléfono celular; consistente dicha alegada "intrusión" en, de manera voluntaria e intencional, haber dejado encendido dicho teléfono celular en el Cuartel de la Policía con el expreso propósito de escuchar las llamadas que al mismo se realizaran.

Dados los hechos particulares del presente caso, esa intromisión o intrusión, por parte del Estado, ¿es una "legítima y razonable" o, por el contrario, una que debe ser rechazada por el foro judicial por contravenir la misma las disposiciones generales de la antes citada Sec. 10 del Art. II de nuestra Constitución? Somos del criterio que la contestación a dicha interrogante la encontramos, entre otras fuentes, en la decisión que este Tribunal emitiera en el antes citado caso *P.R. Tel. Co. v. Martínez.*

Recordaremos que en el referido caso, las dueñas o

los titulares de unos teléfonos, las cuales estaban siendo objeto de llamadas obscenas, solicitaron del foro judicial una orden que le permitiera a la Puerto Rico Telephone Company interceptar sus teléfonos; ello con el propósito de poder identificar a las personas que realizaban dichas llamadas. Este Tribunal, *en lo pertinente*, resolvió que —a pesar de que para que una conversación telefónica pueda ser válidamente interceptada en nuestra jurisdicción se requiere, de ordinario, una "renuncia bilateral", esto es, consentimiento tanto de la persona dueña del teléfono como de la persona que llama al mismo— *ello presupone, y parte de la premisa, que se trata de una llamada con propósitos lícitos.* Véase *P.R. Tel. Co. v. Martínez*, ante, págs. 343–344.

■ En otras palabras, se resolvió que la "intrusión" al derecho a la intimidad que se configura respecto a la persona que llama a dicho teléfono con propósitos lícitos *tiene* que ser protegida, advirtiéndole a ésta del hecho de la interceptación que se está llevando a cabo. *Ello, sin embargo, no se requiere que se haga, resolvió el Tribunal en dicho caso, en la situación de la persona que hace llamadas criminosas.* Dicho de otra forma, *la "intrusión" con el derecho a la intimidad que se configura en la situación de las llamadas criminosas es una "razonable y legítima" que no viola la citada Sec. 10 del Art. II de nuestra Constitución.*

■ Somos del criterio que esa, *precisamente*, es la situación del caso hoy ante nuestra consideración. Nuestra sociedad, no hay duda, está siendo azotada y gravemente perjudicada por el tráfico de drogas; vil trasiego en el cual juega, hoy día, un importante papel el uso de teléfonos celulares por parte de los traficantes de droga. La razón para ello resulta ser sorprendentemente sencilla: su uso portátil hace viable que su poseedor se transporte, y se comunique con otras personas, con suma rapidez de un lugar a otro, haciendo más fácil la consumación de dichas transacciones. Ello, naturalmente, nos obliga a considerar —al

*igual que en el caso de los automóviles*—([6]) que la "expectativa de intimidad", respecto a los mismos, sea de menor grado. Si a ello le añadimos el hecho de que es de *conocimiento público* que una conversación que es sostenida a través de un teléfono celular puede ser escuchada, con suma facilidad, por otras personas —por razón de tratarse de ondas radiales— *no* hay duda de que la "expectativa de intimidad" que puede tener el poseedor de dicho teléfono *no* puede ser muy grande.

En resumen, y bajo los hechos específicos del presente caso —conforme los cuales el Estado era, a todos los fines legales, el dueño del teléfono celular en controversia y la actuación del agente meramente se limitó a dejar encendido dicho teléfono y contestar el mismo al éste activarse— somos del criterio que la acción del Estado, asumiendo que la misma puede ser catalogada como una "intrusión" al derecho de intimidad del recurrido Colón Rafucci, fue una "legítima y razonable" a la luz de las disposiciones de la citada Sec. 10 del Art. II de nuestra Constitución.

Esto es, resolvemos que el reclamo al derecho a la intimidad del recurrido Colón Rafucci es uno irrazonable e ilegítimo; razón por la cual *no* procede en derecho la solicitud de supresión de evidencia que éste radicara ante el tribunal de instancia.

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón está conforme con las partes I, II y III de la opinión mayoritaria y

---

([6]) En este respecto, resultan interesantes las expresiones que este Tribunal hiciera en *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988). En dicho caso, luego de *reafirmar* la norma a los efectos de que, debido "a la diferencia conceptual y funcional entre una residencia y un automóvil, y a la cuidadosa reglamentación que rige su uso en las vías públicas, los tribunales han concluido que la expectativa de intimidad es menor cuando se usa un automóvil" (íd., pág. 478), este Tribunal expresó, como fundamento de lo antes expuesto, que:

"... no podemos ignorar que *dada su movilidad* el automóvil en ocasiones es el medio utilizado por los delincuentes para sus actividades ilícitas y que con frecuencia es el producto del delito ...." (Énfasis suplido.) Íd., pág. 479.

con el resultado de que no procede la supresión. El Juez Asociado Señor Hernández Denton emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

— O —

Opinión concurrente del Juez Asociado Señor Hernández Denton.

Coincido con la opinión mayoritaria en que procede la revocación del dictamen recurrido. Sin embargo, no estamos de acuerdo con ciertas expresiones de la mayoría que reducen de forma innecesaria la expectativa de intimidad sobre las llamadas realizadas a través de teléfonos celulares. Por tal razón suscribimos esta opinión concurrente.

I

En su resolución, el foro de instancia realizó la siguiente determinación de hechos, la cual fue aceptada como correcta por el Ministerio Público en su alegato:

> La Policía de Puerto Rico ocupó un teléfono celular de un ciudadano conocido por "Mae" y lo situó en la oficina de la División de Drogas y Narcóticos. El 23 de marzo de 1993 estando encendido dicho teléfono sonó el timbre del mismo indicativo de que alguien había marcado su número. El agente Antonio Hernández Bianchi contestó la llamada. La persona que llamó le dijo, "Mae, es Carlos y necesito una cuarta de manteca", refiriéndose a cocaína. El agente le hizo creer a la persona que llamó que él era "Mae" y que estaba hablando con "Mae", o sea impersonó [sic] en su conversación a "Mae". El agente fue a hablar con el director de la unidad y éste le dio instrucciones para que completara la transacción y presentara una denuncia por violación al artículo 406 de la Ley de Sustancias Controladas.
> Posteriormente el agente recibió una segunda llamada de la misma persona. El agente le preguntó si él era el de la cuarta

de perico y éste le dijo que sí, respondiéndole el agente que había hablado con "Mae" sobre el precio y que éste le dijo que eran $350.00. Ambos acordaron la fecha y sitio de entrega y el agente en lugar de cocaína le entregó al acusado harina de trigo y presentó una denuncia por violación al artículo 406 de la Ley de Sustancias Controladas. Posteriormente en vista preliminar en alzada se encontró causa probable contra el acusado por violación al artículo 404 de dicha ley. Petición de *certiorari,* págs. 2–3.

Colón Rafucci no ha cuestionado la posesión del teléfono por parte de la Policía. A tenor con la ley, el teléfono estaba bajo la custodia provisional de un funcionario del orden público. Art. 7 de la Ley Uniforme de Confiscaciones de 1988 (34 L.P.R.A. sec. 1723e). Sin embargo, el recurrido alega que el acto de contestar el teléfono constituyó una intervención ilegal y una interceptación telefónica, en violación al Art. II, Sec. 10 de nuestra Constitución, L.P.R.A., Tomo 1.

Coincidimos con la opinión del Tribunal en que este caso no suscita una situación de interceptación telefónica. El Estado no intervino una comunicación telefónica entre dos (2) personas; en realidad fue parte de ésta. La utilización de un teléfono como medio de comunicación está protegida por la Constitución de modo que el Estado no intervenga en conversaciones entre particulares. Sin embargo, dicha protección no impide la utilización de teléfonos por parte del Estado en el ejercicio de sus funciones investigativas.

De igual modo concurrimos en que la acción del Estado al contestar el teléfono fue legítima y razonable. Cuando una persona conversa con otra y le comunica unas declaraciones relacionadas a un crimen, asume el riesgo de que quien recibe la información pueda comunicarla a la Policía. Fuera de los privilegios reconocidos en el derecho probatorio,[1] la información que se brinda a otra persona de forma voluntaria e ignorando que el receptor es un agente del orden público, no está cobijada por una expectativa de in-

---

[1] Reglas 23–35 de Evidencia, 32 L.P.R.A. Ap. IV.

timidad que impida su utilización en un proceso de investigación policíaca. En *Pueblo v. De León Martínez*, 132 D.P.R. 746, 759 (1993), el Tribunal expresó lo siguiente:

> Lo ordinario ha sido que una persona que participa en una conversación puede repetir *ad verbatim* lo que se ha dicho en ella. La persona que voluntariamente entra en una conversación con otra se corre el riesgo de que ésta memorice y luego divulgue dicha conversación.[2]

Al examinar la posición de Colón Rafucci, no encontramos que exista diferencia entre los hechos de este caso y uno donde el acusado haya conversado personalmente con un agente encubierto o un confidente. En el caso de los agentes encubiertos, la persona investigada conversa con el agente bajo la creencia de que conoce su identidad real. La función del agente es precisamente aparentar ser alguien confiable, de modo que la persona bajo investigación se sienta en la libertad de compartir posible información relacionada con la comisión de actos delictivos. Aunque en varias ocasiones hemos reiterado la necesidad de examinar con cautela el testimonio de un agente encubierto, su utilización como práctica investigativa por la Policía resulta necesaria y, en ocasiones, imprescindible. *Pueblo v. Carballosa y Balzac*, 130 D.P.R. 842 (1992); *Pueblo v. Álamo Álamo*, 116 D.P.R. 673 (1985); *Pueblo v. Tribunal Superior*, 102 D.P.R. 524 (1974); *Pueblo v. Seda*, 82 D.P.R. 719, 730 (1961). De igual modo, el uso de confidentes es esencial en la importante función gubernamental de combatir el crimen. *Pueblo v. López Rivera*, 91 D.P.R. 693 (1965).

Tampoco estamos ante la grabación de una conversación privada. En *Pueblo v. Santiago Feliciano*, 139 D.P.R. 360 (1995), opinión disidente, estimamos que nuestra Constitución reconoce una expectativa de intimidad sobre la gra-

---

[2] Lo indicado no significa que la persona no albergue una expectativa de intimidad sobre la grabación de la conversación. Ya antes hemos sostenido que en tales casos estamos ante un registro y se activan las salvaguardas constitucionales. Véase *Pueblo v. Santiago Feliciano*, 139 D.P.R. 360 (1995), opinión disidente.

bación de conversaciones no telefónicas. La utilización de este tipo de procedimiento investigativo activa la protección constitucional contra registros e incautaciones irrazonables. Ni la opinión mayoritaria en *Santiago Feliciano* ni nuestra opinión disidente en aquel caso consideran que tal expectativa de intimidad impida que una persona con quien se conversa pueda divulgar información de naturaleza criminal que uno le comunique.

## II

Por entender que de lo anterior puede concluirse la inexistencia de una expectativa a la intimidad que torne ilegal la actuación gubernamental, consideramos innecesarias las expresiones de la mayoría en cuanto a la expectativa de intimidad sobre las llamadas realizadas con teléfonos celulares. Tomamos conocimiento judicial sobre el amplio uso que la población en general hace de este nuevo medio de comunicación. No podemos suscribir la opinión de la mayoría en cuanto a que minimiza la expectativa de intimidad sobre una llamada realizada a través de un teléfono celular. El medio utilizado no es concluyente para determinar la legalidad de la actuación gubernamental; lo decisivo es el tipo de intervención. Al estar legalmente ocupado el teléfono, la comunicación fue equivalente a una conversación persona a persona. Dado que no existe la interceptación telefónica proscrita por la Constitución, poco importa que la información se hubiera transmitido a través de un teléfono; menos aún uno celular.

Por esa misma razón diferimos de la opinión mayoritaria en cuanto asevera que la solución a la situación de autos se encuentra en el razonamiento del Tribunal en *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328 (1983). Según la mayoría, en aquella ocasión resolvimos que en el caso de "llamadas [telefónicas] criminosas, la " 'intrusión' con el derecho a la intimidad que se configura ... es una 'razonable y

legítima...' ". (Énfasis suprimido.) Opinión mayoritaria, pág. 966.

La utilización de ese precedente resulta inadecuada por dos (2) razones. En primer lugar, repetimos, este caso no plantea un asunto de intervención telefónica. En segundo lugar, y tal como afirmamos en nuestra opinión disidente en *Pueblo v. Santiago Feliciano*, supra, la norma expuesta en *P.R. Tel. Co. v. Martínez*, supra, no asume que la expectativa de intimidad en llamadas de naturaleza criminal sea menor:

> En este caso se dispuso que el que realizaba llamadas ilegales a otro teléfono renunciaba a su derecho constitucional a que no se le interceptara la comunicación telefónica. Una lectura de esta decisión revela que esta determinación se fundamentó en que existía una expectativa razonable de intimidad sobre la conversación telefónica. De lo contrario, no hubiese sido necesario decidir que la persona que realizaba las llamadas indeseables renunció a ese derecho. *Pueblo v. Santiago Feliciano*, supra, pág. 457, opinión disidente.

En aquel caso se determinó que una interceptación de una comunicación telefónica era permisible cuando ambas partes en la conversación renunciaban a su derecho. Mientras que la persona que solicita la intervención renuncia expresamente a su expectativa de intimidad, quien realiza llamadas ilícitas renuncia implícitamente.[3]

En tanto la llamada que realizó Colón Rafucci no fue interceptada ni hubo una renuncia a un derecho constitucional, las referencias a *P.R. Tel. Co. v. Martínez*, supra, son innecesarias. Fue el recurrido quien de forma voluntaria se tomó la iniciativa de hacer expresiones que advirtieron al policía que se trataba de una comunicación relacionada con actividades criminales. Por considerar que los

---

[3] "Quien origina aislada o repetidamente llamadas telefónicas sin autorización expresa o implícita del destinatario no puede argumentar persuasivamente que no renuncia su derecho a tal protección." *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328, 344 (1983).

agentes estatales actuaron de forma legal y que Colón Rafucci no albergaba una expectativa de que sus expresiones no fueran empleadas en un procedimiento investigativo, concurrimos con el resultado al que llega la mayoría. Procede revocar al foro de instancia por no haber una interceptación telefónica que active la protección constitucional del Art. II, Sec. 10 de nuestra Constitución.