Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>MARTÍN MANZO MARTÍN<br><br>Peticionario | TA2025CE00840 | *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Criminal Núm.: GSVP201600136 G1VP201601306 (307)<br><br>Por: Art. 3.1, Ley 54 |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de enero de 2026.

Comparece ante nos el señor Martín Manzo Martín ("señor Manzo Martín" o "Peticionario") mediante *Certiorari* presentado el 1 de diciembre de 2025. Nos solicita la revocación de la *Orden* emitida el 23 de septiembre de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Guayama ("foro primario" o "tribunal *a quo*"). Por virtud del aludido dictamen, el foro primario denegó la solicitud del Peticionario en la que solicitó la devolución de su fichaje al amparo del Artículo 4 de la Ley Núm. 45 de 1 de junio de 1983, según enmendada, conocida como la *Ley de Huellas Digitales y Fotografías por Delito Grave*, 25 LPRA sec. 1151 ("Ley Núm. 45")

Por los fundamentos que expondremos a continuación, **expedimos** el auto de *certiorari* y **confirmamos** el dictamen recurrido.

### I.

Conforme surge del expediente, por hechos ocurridos el 30 junio de 2016, al Peticionario se le imputó la comisión del delito

contenido en el Artículo 3.1 de la Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA sec. 631. Como parte del procedimiento, el señor Manzo Martín fue fichado y sus huellas dactilares y fotografías se registraron en los archivos de la Policía de Puerto Rico.

Se desprende de los autos que, tras llevarse a cabo una vista preliminar y una vista preliminar en alzada, el foro primario realizó una determinación de no causa probable para acusar al Peticionario por el delito imputado. Así las cosas, el 28 de agosto de 2025, el señor Manzo Martin presentó *Moción Asumiendo Representación Legal y en Solicitud de Orden a la Policía de Puerto Rico.*[1] Al amparo de este escrito, el Peticionario solicitó una orden a los efectos de que la Policía de Puerto Rico le devolviera los documentos relacionados a su fichaje.

En respuesta, el 22 de septiembre de 2025, el Ministerio Público presentó *Moción en Cumplimiento de Orden.*[2] Mediante esta, alegó que no procedía la solicitud del Peticionario, toda vez que Artículo 4 de la Ley Núm. 45, *supra,* facultaba la devolución de huellas dactilares y fotografías solamente a personas absueltas o indultadas totalmente por el Gobernador de Puerto Rico.

Evaluados los escritos ante su consideración, el 23 de septiembre de 2025, notificada al día siguiente, el foro primario emitió *Orden* en la que declaró *No Ha Lugar* la solicitud del señor Manzo Martín.[3] Inconforme con el resultado, el Peticionario presentó *Reconsideración.*[4] Mediante esta, alegó que, puesto a que había recibido una determinación de no causa en los cargos criminales que pesaban en su contra, nunca se le formuló acusación alguna, por lo que no tuvo que comparecer a un juicio. Asimismo, aludió que la oposición del Ministerio Público se hizo

---

[1] Véase, SUMAC TA, Entrada 1, Anejo, págs. 3-4.
[2] Véase, SUMAC TA, Entrada 1, Anejo, pág. 5.
[3] Véase, SUMAC TA, Entrada 1, Anejo, págs. 7-8.
[4] Véase, SUMAC TA, Entrada 1, Anejo, págs. 9-14.

fuera del término de diez (10) días que establece el Artículo 4 de la Ley Núm. 45, *supra*. Además, destacó que el Ministerio Público no esbozó fundamentos que sustentaran la denegatoria de los documentos solicitados. Finalmente, argumentó que el foro primario debió celebrar una vista previo a emitir su determinación.

Examinado este escrito, el 15 de octubre de 2025, notificada el 30 de octubre del mismo año, el tribunal *a quo* emitió *Resolución* en la que declaró *No Ha Lugar* la solicitud de reconsideración instada por el Peticionario.[5]

Aún Insatisfecho, el 1 de diciembre de 2025 el Peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Erró el Foro A Quo al no conceder la devolución de fichaje al peticionario a pesar de que nunca llegó a ostentar carácter de acusado el proceso legal concerniente al no prosperar en etapa de vista preliminar.
>
> Erró el Foro A Quo al tomar en consideración la oposición formulada por el Ministerio Fiscal, fuera del término mandatado por Ley Núm. 45 del 1 de junio de 1983, conocida como la Ley de [sic] Ley de Huellas Digitales y Fotografías por Delito Grave.
>
> Erró y abusó de su discreción el Foro A Quo al declarar "No Ha Lugar" la solicitud de devolución de fichaje interpuesta por el peticionario, luego de la oposición infundada interpuesta por parte del Ministerio Fiscal y sin celebrar la vista mandatada por el Art. 4 de la Ley Núm. 45 del 1 de junio de 1983, conocida como la Ley de [sic] Ley de Huellas Digitales y Fotografías por Delito Grave.

El 5 de diciembre de 2025, esta Curia emitió *Resolución* en la cual se le concedió hasta el 11 de diciembre de 2025 a la parte Recurrida para que mostrara causa por la cual no se debía expedir el auto de *certiorari*. Por su parte, la Oficina del Procurador General de Puerto Rico, compareció el 10 de diciembre de 2025, mediante *Solicitud de Extensión de Término* en la que solicitó una prórroga de diez (10) días para presentar su postura. Así pues, el 11 de diciembre de 2025 se le concedió a la parte Recurrida hasta

---

[5] Véase, SUMAC TA, Entrada 1, Anejo, pág. 14.

el 22 de diciembre de 2025 para que presentara su oposición a la expedición del recurso.

Oportunamente, el 22 de diciembre de 2025, la parte Recurrida compareció mediante documento intitulado *Escrito en Cumplimiento de Orden.* Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.
### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

## B. *Ley de Huellas Digitales y Fotografías por Delito Grave*

La Asamblea Legislativa promulgó la *Ley de Huellas Digitales y Fotografías por Delito Grave*, Ley Núm. 45 de 1 de junio de 1983, según enmendada, 25 LPRA sec. 1151, et seq. ("Ley Núm. 45"). Conforme se desprende de la exposición de motivos de la referida legislación, "se ha sostenido que la toma de huellas digitales y fotografías son procedimientos usuales y necesarios para la labor de la policía en protección de la seguridad pública y en la persecución del crimen".

Así pues, el Artículo 1 del mencionado estatuto, dispone que la Policía de Puerto Rico "deberá tomarle las huellas digitales y fotografiar a cualquier persona a la que, previa determinación de causa probable para arresto, se le impute la comisión de un delito grave". 25 LPRA sec. 1151.

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha resuelto que "la toma de fotografías y huellas dactilares a las personas detenidas para responder de delito público constituye una práctica aceptable como parte de la labor investigativa de la Policía". *Pueblo v. Torres Albertorio*, 115 DPR 128, 130 (1984) citando a *Archevali v. E.L.A.*, 110 DPR 767 771 (1981).

Por su parte, en lo pertinente, el Artículo 4 de la Ley Núm. 45, *supra,* dispone:

> Cualquier persona a la que se le impute la comisión de su delito grave o menos grave producto de una misma transacción o evento **que resulte absuelta** luego del **juicio**

**correspondiente**, o por orden o resolución del Tribunal o **toda persona que reciba un indulto total y absoluto del Gobernador**, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías. El peticionario notificará al Ministerio Publico y de éste no presentar objeción dentro del término de diez días, el Tribunal podrá ordenar, sin vista, la devolución solicitada. De haber objeción del Ministerio Publico, el Tribunal señalará vista pública a esos efectos (Énfasis nuestro). 25 LPRA sec. 1154.

En sintonía con lo anterior, al abordar el alcance del precitado Artículo, nuestro más Alto Foro dispuso lo siguiente:

[L]a protección de la seguridad pública supera cualquier incomodidad personal generada por la retención por parte del Estado de la información de identificación incidental al arresto válido. De ese modo, se logra mantener una base de datos robusta que le permite a las autoridades ejercer cabalmente su imprescindible labor investigativa para atajar la criminalidad. *Santiago Cora v. ELA*, 215 DPR__ (2025) 2025 TSPR 44, págs. 19-20.

**III.**

En el presente recurso, el Peticionario nos solicita la revocación de la *Orden* emitida el 23 de septiembre de 2025, notificada al día siguiente por el foro primario. En concreto, esboza como primer señalamiento de error, que el tribunal *a quo* incidió al no conceder la devolución del fichaje solicitado, pese a que los delitos que se le imputaron no prosperaron en etapa de vista preliminar. Como segundo error, señala que el foro primario no debió tomar en consideración la oposición instada por el Ministerio Público, ya que esta se sometió fuera del término establecido en la Ley Núm. 45, *supra.* Finalmente, como tercer error, el Peticionario argumenta que el foro primario no podía emitir su dictamen sin llevarse a cabo una vista. No le asiste la razón. Veamos.

En nuestro ordenamiento, todo lo concerniente al manejo de la información relacionada al fichaje policial está regulado por la Ley Núm. 45. Véase, *Santiago Cora v. ELA, supra,* pág. 8. En concreto, la referida legislación provee un procedimiento para que una persona pueda solicitar la devolución de las huellas digitales y fotografías obtenidas durante el fichaje. Así pues, el Artículo 4 de la Ley Núm. 45, *supra,* dispone claramente lo siguiente:

> Cualquier persona a la que se le impute la comisión de su delito grave o menos grave producto de una misma transacción o evento que **resulte absuelta luego del juicio correspondiente**, o **por orden** o **resolución del Tribunal** o **toda persona que reciba un indulto total y absoluto del Gobernador**, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías.

Nótese que el precitado Artículo "únicamente vislumbra que pueden solicitar la devolución de fotos y huellas dactilares las personas que: (1) resultaron absueltas, o (2) recibieron un indulto total y absoluto del Gobernador". *Santiago Cora v. ELA, supra,* pág. 16. Como corolario de lo anterior, es menester recordar que cuando "el legislador se ha manifestado con un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa". *Vázquez et al. v. DACo*, 215 DPR___ (2025), 2025 TSPR 56, pág. 16.

En su recurso, argumenta el Peticionario que, dado a que nunca recibió una acusación por los delitos que se le imputaron, este no recibió el carácter de acusado y por tanto nunca tuvo que comparecer en un juicio. No empece a lo anterior, el texto del Artículo 4 es claro en cuanto a qué persona puede solicitar la devolución del fichaje, y lo limita a dos (2) circunstancias. La primera, la persona que "resulte absuelta luego del juicio correspondiente". Como puede observarse, el propio texto de la Ley, específica que la absolución de la persona que solicite los documentos debe darse luego de la celebración de un juicio en su fondo. Ello es así ya que, en nuestro ordenamiento jurídico, el fallo absolutorio "sólo puede ser emitido en el contexto de un juicio". *Pueblo v. Rivera Rivera*, 117 DPR 283, 290 (1986). Ciertamente, esto no ocurrió con el Peticionario. Asimismo, el señor Manzo Martín tampoco cumplió con la segunda circunstancia esbozada en la Ley Núm. 45, ya que, del expediente se desprende, que éste no obtuvo un indulto total y absoluto del Gobernador.

Ante tales circunstancias, es forzoso concluir que el señor Manzo Martín estaba impedido de solicitar el beneficio contenido en el Artículo 4 de la Ley Núm. 45. En consecuencia, el primer error esbozado por el Peticionario no se cometió pues este no tenía legitimación para someter una solicitud de devolución de huellas digitales y fotografías de un fichaje.

Cónsono con lo antes expuestos, es irrelevante la discusión en torno a la moción en oposición sometida tardíamente por el Ministerio Público y el asunto concerniente a la cerebración de una vista en la presente controversia. Por tanto, no es necesario atender el segundo y tercer señalamiento de error.

En fin, cónsono con los criterios que guían nuestra discreción y el derecho aplicable establecido en *Santiago Cora v. ELA, supra,* pág. 19 el cual dispone que "la protección de la seguridad pública supera cualquier incomodidad personal generada por la retención por parte del Estado de la información de identificación incidental al arresto válido", determinamos expedir el auto de *certiorari* y confirmar el dictamen recurrido.

**IV.**

Por los fundamentos expuestos, **expedimos** el auto de *certiorari* presentado y **confirmamos** la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones